**AIRPORT IMPACT RELIEF, INC.,
et al., Plaintiffs, Appellants,**

v.

**Kenneth R. WYKLE, Administrator,
Federal Highway Administration,
et al., Defendants, Appellees.**

**No. 99–1469.**

United States Court of Appeals,
First Circuit.

Heard Aug. 5, 1999.

Decided Oct. 1, 1999.

---

Peter L. Koff, with whom McGowan, Engel, Tucker & Schultz, P.A. was on brief, for appellants.

Stephen H. Burrington and Veronica Eady on brief for Conservation Law Foundation and Alternatives for Community and Environment, amici curiae.

Marc P. Frey and Tinti, Quinn, Grover & Frey, P.C. on brief for Sierra Club, amicus curiae.

Jennifer Zacks, Assistant United States Attorney, and Stephen M. Leonard, with whom Donald K. Stern, United States Attorney, Thomas F. Reilly, Attorney General, Pierce O. Cray, Assistant Attorney General, Administrative Law Division, William L. Pardee, Assistant Attorney General, Environmental Protection Division, Marilyn Newman and Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C. were on brief, for appellees.

Before TORRUELLA, Chief Judge, LIPEZ, Circuit Judge, and FUSTÉ,[*] District Judge.

TORRUELLA, Chief Judge.

Plaintiffs-appellants Airport Impact Relief, Inc. ("AIR") and individual residents of East Boston[1] filed the present action to review and set aside the June 25, 1998 decision of Peter Markle, Division Administrator of the Federal Highway Administration ("FHWA"), to approve the Massachusetts Highway Department's ("MHD") revised plans for a construction project without preparing a supplemental environmental impact statement ("SEIS"). After conducting what it termed a "Phase One Nonjury Trial," the district court entered judgment in favor of the defendants, finding that Markle's decision to approve the

---

[*] Of the District of Puerto Rico, sitting by designation.

[1] The individual plaintiffs-appellants are Lucy Ferullo, Mary Ellen Welch, Roberta Horn, Arthur Horn, Jay Benson, Regina Marchi, Ignacio Ochoa, and Christopher Marchi.

changes to the project without preparing an SEIS was not "arbitrary and capricious." Plaintiffs appeal, and we affirm.

## BACKGROUND

The Central Artery/Tunnel Project (the "CA/T Project") is an extensive construction project planned in Boston, Massachusetts that is designed to ameliorate traffic congestion through downtown Boston and the two tunnels connecting downtown Boston with East Boston and Logan Airport. The portion of the project at issue connects two new roadways (Route 1A Northbound and Route 1A Southbound) with the Massachusetts Bay Transportation Authority's ("MBTA") Blue Line Airport Station. We refer to this portion as the Logan Airport/Route 1A Interchange.

In 1985, the FHWA conducted an environmental review of the CA/T Project and prepared a Final Environmental Impact Statement ("FEIS"). The FHWA then approved the construction plans for the CA/T Project in 1986. In 1991, the project plans were revised, and the FHWA prepared a Final Supplemental Environmental Impact Statement ("FSEIS") addressing the changes to the project. The FHWA approved the revised project in its 1991 Record of Decision.

In 1997, MHD issued a Notice of Project Change ("NPC") proposing a number of changes to the surface roads and transit elements of the Logan Airport/Route 1A Interchange. One change involves extending service road SR–2 so that it continues north to connect to the intersection of Prescott and Frankfort Streets. Under the previous design, SR–2 detoured east before continuing north. The proposed extension of SR–2 would result in the extended portion being located approximately 750 feet west of SR–2's location in the 1991 approved plans. This would move SR–2 to the west of a seven-acre parcel of land known as the Robie Parcel. Thus, SR–2 would no longer bisect the Robie Parcel or separate it from the airport.

In addition to relocating SR–2, the proposed changes consist of: (1) the relocation of Airport Station approximately 500 feet north of its current location; (2) the redesign of Airport Station's passenger entrances and bus platforms, including the elimination of the planned cross-platform connection between Logan Airport shuttle buses and the Blue Line trains; (3) the elimination of a bus loop that would have connected both sides of Airport Station; (4) changes in the elevations of ramps and roadways, including raising Route 1A Southbound to as high as 36 feet; (5) the realignment of Ramp T–S and service road SR–10 to Terminal A; (6) the widening and extension of service road SR–10; (7) the elimination of service road SR–1; (8) the redesign of Ramp 1A–S as a surface roadway; and (9) the addition of service road SR–14 to connect Logan Airport and Airport Station.

The NPC was circulated for public comment by MHD as part of the environmental review process required by the Massachusetts Environmental Protection Act ("MEPA"). Several members of the public, including representatives of appellant AIR, raised environmental issues and concerns regarding the NPC. On May 13, 1998, Massachusetts Secretary of Environmental Affairs Trudy Coxe determined that the environmental effects of the changes did not require MHD to prepare a supplemental state environmental impact report.

While the state environmental review process proceeded, MHD also requested federal approval of the changes from the FHWA. On April 24, 1998, MHD submitted to the FHWA an Environmental Reevaluation of the proposed changes, consisting of the NPC and additional information gathered during the state review process. In the Environmental Reevaluation, MHD analyzed the environmental impacts of the proposed changes and expressed its belief that the FHWA need not conduct any further environmental review under the

National Environmental Policy Act of 1969 ("NEPA"). In a June 1, 1998 letter to the FHWA, Acting Deputy Regional Administrator Mindy Lubber of the United States Environmental Protection Agency ("EPA") expressed the opinion that the changes merited a thorough environmental review and comment process under NEPA. After the FHWA reviewed the Environmental Reevaluation, FHWA Division Administrator Markle issued a June 25, 1998 decision letter to MHD, concurring in MHD's conclusion that the proposed changes will have "negligible environmental impacts," and therefore do not require the preparation of an SEIS.

In July of 1998, plaintiffs filed the present action, challenging the FHWA's approval of the project changes and naming as defendants; (1) Markle, Division Administrator of the FHWA; (2) Kenneth R. Wykle, Administrator of the FHWA; (3) Kevin J. Sullivan, Commissioner of MHD; and (4) Patrick J. Moynihan, Chairman of MBTA and Secretary of the Executive Office of Transportation and Construction. In Count One, plaintiffs claimed that the June 25, 1998 decision violated section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), and its applicable regulations by failing to require an SEIS to be prepared. In Counts Two and Three, which are not at issue in this appeal, plaintiffs claimed that the FHWA violated: (1) section 4(f) of the Department of Transportation Act of 1996, 49 U.S.C. § 303(c) and 23 U.S.C. § 138, and (2) Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* Count Three was dismissed by stipulation on October 1, 1998.

The FHWA's administrative record was filed with the district court, and the parties sought to resolve the case through cross-motions for summary judgment. The district court advised the parties that any motions for summary judgment would be treated as motions for judgment upon the conclusion of a "Phase One Nonjury Trial." Both sides then moved for judgment in their favor upon conclusion of the Phase One Trial on both Counts One and Two.

The district court conducted a three-day "Phase One Nonjury Trial" to address three issues: (1) the extent to which evidence beyond the FHWA's administrative record would be considered in reviewing the FHWA's decision; (2) whether the evidence created a genuine issue of material fact that would require a Phase Two Trial on the merits of the case; and (3) whether any party was entitled to judgment as a matter of law at the end of the Phase One Trial. The parties stipulated to various facts, and their counsel presented the parties' respective positions and argued the pending motions. No witnesses testified at the trial, but each party moved to admit additional affidavits and declarations in an attempt to supplement the administrative record. Counsel for each side explained to the district court the project's proposed changes and the likely effects of those changes. Counsel argued at length about the factors that the FHWA should have considered and about whether those factors were in fact considered.

In an extensive March 25, 1999 opinion, the district court: (1) granted in part and denied in part the parties' motions to supplement the administrative record with affidavits and declarations; (2) granted defendants' motion for judgment upon conclusion of the Phase One Trial; and (3) denied plaintiffs' motion for judgment upon conclusion of the Phase One Trial. *See Airport Impact Relief, Inc. v. Wykle,* 45 F.Supp.2d 89, 109 (D.Mass. 1999). In ruling that defendants were entitled to judgment as a matter of law, the district court first outlined the numerous facts that were stipulated to by the parties. *See id.* at 94–98. The district court then allowed plaintiffs to supplement the administrative record with affidavits from Frederick Salvucci and Mary Ellen Welch to demonstrate factors that the FHWA should have considered, but did not. *See id.* at 98–99. The court also allowed defendants to supplement the

record with affidavits from Markle and the FHWA's CA/T Project Administrator, Thomas Smith, to explain the steps taken by the FHWA to reach their decision.[2] *See id.* at 99. The court next addressed and dismissed each of plaintiffs' claims that there were procedural flaws in the FHWA's decisionmaking process. *See id.* at 100–01. The court then turned to the likely environmental impacts of the project changes and found that the FHWA properly considered each impact raised by plaintiffs and that those impacts were not significant enough to require the preparation of an SEIS under NEPA. *See id.* at 101–07. The court also found that the FHWA satisfied its NEPA obligation to give consideration to the concerns expressed by the EPA in the June 1, 1998 letter. *See id.* at 107. Finally, the court found that the FHWA's decision did not violate section 4(f) of the Department of Transportation Act. *See id.* at 108–09.

Plaintiffs filed a timely notice of appeal and now press only the issue of whether the FHWA violated NEPA in failing to prepare an SEIS for the Logan Airport/Route 1A Interchange. Appellants claim that the FHWA's decision was arbitrary and capricious because it did not properly evaluate the environmental significance of the project changes and changed circumstances.

## DISCUSSION

### I. Standards of Review

This appeal entails two levels of review: (1) judicial review of the FHWA's administrative decision, and (2) appellate review of the district court's judgment upholding the FHWA's decision.

### A. Judicial Review of the Administrative Agency's Action

■ Judicial review of a federal agency's compliance with NEPA is governed by section 10 of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A). *See Sierra Club v. Marsh,* 976 F.2d 763, 769 (1st Cir.1992) ("*Sierra Club II* ") (citing *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 375, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). Under that section, the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Sierra Club II,* 976 F.2d at 769. "The task of a court reviewing agency action under the APA's 'arbitrary and capricious' standard is to determine whether the agency has examined the pertinent evidence, considered the relevant factors, and 'articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.' " *Penobscot Air Servs., Ltd. v. Federal Aviation Admin.,* 164 F.3d 713, 719 (1st Cir.1999) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (citation and internal quotation marks omitted)). The reviewing court must determine whether the decision was based on a consideration of the relevant factors and whether the agency made a clear error of judgment. *See Oregon Natural Resources Council,* 490 U.S. at 378, 109 S.Ct. 1851 (citing *Citizens to Pre-*

2. In broadly allowing all of defendants' proffered affidavits, the court also appeared to allow defendants to present the affidavits of Michael P. Lewis, Douglas Wheaton, and James K. Hughes for the same purpose of explaining the FHWA's decision. *See Airport Impact Relief,* 45 F.Supp.2d at 98–99. However, both Lewis and Hughes are employed by the CA/T Project, and Wheaton is employed by the Massachusetts Port Authority ("Massport"). Since none of the three are employed by the FHWA, it is difficult to see how the district court could have allowed their affidavits as explanation of the FHWA's decisionmaking process. Nevertheless, because the district court did not mention the Wheaton or Hughes affidavits again, and because it referred to the Lewis affidavit on only a minor point that was corroborated by Markle and Smith, we find this apparent contradiction to be unimportant.

serve *Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)); *Dubois v. United States Dep't of Agric.*, 102 F.3d 1273, 1285 (1st Cir.1996), *cert. denied*, 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997).

■ While this is a highly deferential standard of review, it is not a rubber stamp. *See Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 290 (1st Cir.1995). The reviewing court must undertake a "thorough, probing, in-depth review" and a "searching and careful" inquiry into the record. *Volpe*, 401 U.S. at 415–16, 91 S.Ct. 814. Only by carefully reviewing the record and satisfying itself that the agency has made a rational decision can the court ensure that agency decisions are founded on a reasoned evaluation of the relevant factors. *See Oregon Natural Resources Council*, 490 U.S. at 378, 109 S.Ct. 1851; *Penobscot Air Servs.*, 164 F.3d at 720.

## B. Appellate Review of the District Court's Decision

We, of course, are not the first court to review the FHWA's decision; the district court has already upheld that decision in a lengthy and thorough opinion. Thus, we must determine how much deference, if any, should be afforded to that opinion. Appellants argue that because the district court effectively treated the proceedings below as cross-motions for summary judgment, we should review its decision *de novo*. *See Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997). "[W]hen reviewing agency action, we apply the same legal standards that pertain in the district court and afford no special deference to that court's decision." *See id.* (citing *Massachusetts Dep't of Pub. Welfare v. Secretary of Agric.*, 984 F.2d 514, 521 n. 5 (1st Cir.1993)).

■ Even so, we have previously stated that "some degree of deference" or an "appropriate hesitation to overturn [the] judgment" may be appropriate if a district court's determination turns on factual findings, evidence presented by witnesses, or lengthy proceedings in which knowledgeable counsel explain the agency's decision-making process in detail. *See Daley*, 127 F.3d at 109; *Conservation Law Found., Inc. v. Busey*, 79 F.3d 1250, 1256 (1st Cir.1996); *Sierra Club II*, 976 F.2d at 770; *Sierra Club v. Marsh*, 769 F.2d 868, 871– 72 (1st Cir.1985) ("*Sierra Club I*"). Just such a situation is presented here. During a three-day "Phase One Nonjury Trial," the district court: (1) took evidence in the form of affidavits that were not part of the administrative record, *see Airport Impact Relief*, 45 F.Supp.2d at 98–99; (2) made factual and credibility findings regarding those affidavits, *see, e.g., id.* at 101; and (3) conducted exactly the type of "lengthy district court proceedings in which knowledgeable counsel explain the agency's decisionmaking process in detail" referred to in *Sierra Club I* and *Sierra Club II*. In doing so, the district court supplemented the administrative record and expressly made findings based on the supplemented record regarding the FHWA's compliance with NEPA. Therefore, while we agree with appellants that the district court's decision is not entitled to "substantial deference," we also agree with appellees that "[w]e should show proper hesitation to overturn [the] district court's judgment as to the reasonableness of an agency decision." *Sierra Club II*, 976 F.2d at 770.

However, in each previous situation in which we have found such deference to be appropriate, we have found it unnecessary to outline that level of deference because we concluded that the district court's decision should have been affirmed even if no deference was afforded. *See, e.g., id.* at 770. Because we conclude similarly in this case, we again decline the opportunity to more specifically refine the "some degree of deference" or "appropriate hesitation"

standard of review. We leave this task for another day.

## II. Appellants' Claim That the FHWA Should Have Prepared a Supplemental Environmental Impact Statement Under NEPA

Appellants assert that several changes to the project's design and changes in circumstances constitute "substantial changes" and "significant new circumstances" within the meaning of 40 C.F.R. § 1502.9(c)(1), thereby requiring an SEIS to be prepared. Appellants argue that the FHWA did not prepare an SEIS because it failed to consider particular effects of the project changes. As part of this argument, appellants also claim that the FHWA relied too heavily on MHD's analysis and failed to conduct its own independent review of the effects of the project changes.

### A. Standard For Requiring a Supplemental Environmental Impact Statement to be Prepared

Section 102(2)(C) of NEPA requires federal agencies to prepare an environmental impact statement in conjunction with proposals for legislation and other major federal actions that significantly affect the quality of the human environment. *See* 42 U.S.C. § 4332(2)(C). The duty to supplement an EIS is prescribed by the implementing regulations promulgated by both the FHWA and the Council on Environmental Quality ("CEQ"). *See Price Road Neighborhood Ass'n, Inc. v. United States Dep't of Transp.*, 113 F.3d 1505, 1509 (9th Cir.1997). The applicable CEQ regulation requires that agencies prepare supplemental environmental impact statements: (1) if the agency makes substantial changes in the proposed action that are relevant to environmental concerns, or (2) if there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts. *See* 40 C.F.R. § 1502.9(c)(1). The applicable FHWA regulation requires that the FHWA prepare an SEIS: (1) if changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS, or (2) if new information or circumstances bearing on the proposed action would result in significant environmental impacts not evaluated in the EIS. *See* 23 C.F.R. § 771.130(a).

The parties agree that these regulations have been interpreted to require that an SEIS be prepared if the changed plans and circumstances will affect the quality of the human environment "in a significant manner or to a significant extent not already considered" by the federal agency. *See Oregon Natural Resources Council,* 490 U.S. at 374, 109 S.Ct. 1851; *see also Price Road Neighborhood Ass'n,* 113 F.3d at 1509 (stating that supplemental documentation is only required when the environmental impacts are significant or uncertain). Thus, all parties agree that it is the "significance" of the environmental effects of the changes that determines whether or not an SEIS must be prepared.

Appellants argue that the district court required them to meet an overly strict and incorrect legal standard. Appellants claim that the standard employed by the district court requires a showing that the project changes will cause "substantially more adverse environmental effects," as opposed to the "significant effects" standard the parties now agree is the proper standard. In their opening brief on appeal, appellants argued that they should not have been required to demonstrate that the effects were "substantial," rather than "significant." Appellants then backed away from this claim at oral argument when they stated that they were not arguing the difference between "substantial" and "significant." Instead, appellants now focus on the district court's concern for "adverse" environmental effects, rather than all environmental effects. However, we first note that in at least one of the district court's recitations of the standard (in Part V.A. of its opin-

ion), the court properly focused on all impacts of the proposed changes, rather than merely the adverse impacts. The district court did focus on adverse impacts in two other references to the standard, but this focus was entirely appropriate given the circumstances of the case. While an SEIS is apparently required if project changes would significantly affect the human environment in either beneficial or adverse ways, appellants have made no claim that the project changes would offer significant environmental advantages. Appellants argued to the district court that the project changes significantly affected the environment in negative ways, and, in addressing these claims, the district court found no such significant adverse effects to exist. Therefore, we do not fault the district court's inclusion of the word "adverse" in its formulation of the standard on two occasions.

## B. FHWA's Alleged Failure to Consider Particular Effects of the Design Refinements and Changed Circumstances

■ Appellants list several project changes and changed circumstances and argue that an SEIS should have been prepared because those changes and circumstances will significantly affect the quality of the human environment. However, with three exceptions, appellants do not attempt to explain the manner in which the environment will be significantly affected. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 43 (1st Cir.1998); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). Therefore, we treat appellants'

**3.** The fact that the amici make some of these arguments on appellants' behalf does not change our waiver determination. Amici cannot interject into a case issues which the litigants have chosen to ignore. *See Lane v.*

general and undeveloped arguments regarding possible significant effects as waived.[3] Appellants do sufficiently develop their arguments with respect to three particular design refinements, and we address each argument in turn.

## 1. The Relocation of SR–2 and the Possibility of Airport Expansion

■ Appellants first argue that the FHWA acted arbitrarily and capriciously by failing to consider the environmental effects of the relocation of SR–2 and the attendant expansion of Logan Airport that would result from the relocation of a Park & Fly parking lot and the transfer of the Robie Parcel to Massport. Appellants claim that the relocation of SR–2 is part of a "chain of federal actions" that connects with certain state actions and will eventually lead to airport expansion.

In June of 1991, MHD's predecessor agency entered into a Memorandum of Understanding with Massport, the City of Boston, and the owner of a Park & Fly parking lot on Bremen Street. Under the terms of the Memorandum, the parties would engage in a three-way land exchange under which: (1) MHD would receive the land currently occupied by the Park & Fly lot for use as a buffer park; (2) the Park & Fly lot would be relocated to a ten-acre site near Harborside Drive and Maverick Street; and (3) Massport would receive title to the Robie Parcel for possible expansion of the airport. This trilateral land exchange was explicitly made subject to the occurrence of numerous events, including the acquisition of funding and permits and the approval of several governmental bodies. The parties acknowledge that many of these events have still not yet occurred and may not occur for up to eight years, if at all.

*First Nat'l Bank of Boston,* 871 F.2d 166, 175 (1st Cir.1989) (refusing to consider arguments that were not addressed by the parties but were raised on appeal by the amici).

Appellants argue that the administrative record contains repeated correspondence between MHD and the FHWA about the trilateral land exchange, the importance of the buffer area as an environmental mitigation on MHD's part, the value to Massport of relocating SR–2, and the connection between the acquisition of the buffer area and the transfer of the Robie Parcel to Massport. Based upon this, appellants argue that the FHWA should have analyzed the possible impacts of airport expansion before determining that no SEIS was needed.

■ Appellants claim that airport expansion is an "impact" of relocating SR–2. In *Dubois*, we stated that the discussion of impacts must include both direct and indirect effects of a proposed project. *See Dubois*, 102 F.3d at 1286. Appellants admit that airport expansion is not a direct effect of the relocation of SR–2,[4] but they argue that expansion is an indirect effect of that action. When attempting to delineate any such indirect effects, "[t]he agency need not speculate about all conceivable impacts, but it must evaluate the reasonably foreseeable significant effects of the proposed action." *Id.* In addition to resolving the issue of whether airport expansion is an "indirect effect" of the relocation of SR–2, the question of whether airport expansion is "reasonably foreseeable" is also the crux of the inquiry into appellants' alternative argument that airport expansion should be considered as a "cumulative impact" of this "chain of federal actions." *See* 40 C.F.R. § 1508.7.

We find, as the district court found, that appellants have not established that airport expansion is "reasonably foreseeable," as courts have defined that term in this context. The Second Circuit opinion in *Village of Grand View v. Skinner*, 947 F.2d 651 (2d Cir.1991), is illustrative of how the term "reasonably foreseeable" has been interpreted. In that case, the plain-

tiffs argued that the expansion in capacity of a highway, considered in conjunction with possible developments in a highway corridor, would ultimately require a second span of a bridge fed by the highway. Calling the plans for a second span "speculative and contingent," the Second Circuit upheld the FHWA's failure to explicitly address the possible bridge expansion as a cumulative impact of the project change and the possible corridor developments. *See id.* at 660. The court noted that any bridge construction must be preceded by as much as ten years of design studies and project development studies that include consideration of environmental issues. *See id.* at 659. The court also stated that the bridge expansion was only one of a number of proposed alternatives and was therefore "neither imminent nor inevitable." *Id.*

We agree with the district court's view that the present case is analogous to *Grand View*. Any possible airport expansion is contingent on several events that may or may not occur over an eight-year span. These include the acquisition of permits, the arrangement of funding, the drafting of expansion plans, and other contingencies that must occur before even the trilateral land exchange can occur. These contingencies render any possibility of airport expansion speculative and, like the bridge expansion in *Grand View*, neither imminent nor inevitable. Therefore, we find that airport expansion is not "reasonably foreseeable," as that term has been defined in this context. Thus, we cannot fault the FHWA for failing to explicitly address airport expansion as a "cumulative impact" of the relocation of SR–2 and other developments. Nor do we find that the FHWA acted arbitrarily or capriciously in failing to consider airport expansion as an "indirect effect" of the relocation of SR–2. The relocation of SR–2 certainly begins to create the possibility of airport expansion, but far too much must happen before air-

---

4. Appellees describe the direct effects of the relocation of SR–2 on ground traffic, air quality, noise, and vibration at length in their brief. Appellants do not appear to contest that FHWA considered these direct effects.

port expansion could occur for us to describe expansion as even an indirect effect of the project.

We find this result to be consonant with the purposes of NEPA's EIS requirement. "One purpose of the EIS requirement is to 'provide decisionmakers with sufficiently detailed information to aid in determining whether to proceed with the action in light of its environmental consequences.'" *Dubois,* 102 F.3d at 1287 (quoting *Northwest Resource Info. Ctr., Inc. v. National Marine Fisheries Serv.,* 56 F.3d 1060, 1064 (9th Cir.1995)). The EIS requirement "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). As pointed out by appellees, there is no "fit" between the effects of airport expansion that appellants wish to be studied and the decision to be made by the FHWA. It would be futile to require the FHWA to prepare an SEIS studying the environmental impacts of airport expansion when the FHWA is not the entity with either the authority or expertise to implement such expansion. If and when Massport acquires title to the Robie Parcel and seeks to expand the airport or otherwise change the manner in which the parcel is used, that proposal will be subject to the requirements of NEPA as well. If all of the necessary contingencies occur and Massport eventually seeks to expand the airport, the FAA will be the federal agency required to conduct an environmental review under NEPA, so there is no reason or need for the FHWA to consider the effects of airport expansion at this time. Accordingly, we do not find that the FHWA acted arbitrarily or capriciously in failing to consider them.

## 2. Airport Station Design Refinements and Their Effect on Transit Capacity

Appellants next claim that the FHWA failed to evaluate the significance and consequences of the changes in the design and function of Airport Station. In particular, appellants point to the allegedly negative effect that one change—the elimination of the separate bus platforms for the unloading and loading of passengers— would have on the transit capacity of the station. Appellants argue that the district court discussed MHD's consideration of the transit capacity impacts of the proposed changes but made no findings regarding the FHWA's consideration of those impacts.

However, after MHD specifically determined in its Environmental Reevaluation that the revised plan did not diminish transit capacity from present levels, the FHWA independently reviewed and evaluated MHD's conclusions before determining that no SEIS was necessary. Therefore, even though the district court, in finding that the impact on transit capacity was properly considered, did not specifically state that the FHWA also considered that impact, we have no quarrel with the conclusion that the FHWA's decision was not arbitrary or capricious in this regard.

Appellants contest this conclusion, arguing that the FHWA's approval of MHD's evaluation of environmental impacts—on this issue and others—was not preceded by the type of independent review and evaluation that is required by NEPA. The CEQ regulations require that federal agencies independently evaluate any environmental information submitted by applicants for possible use by the agency in preparing an EIS. *See* 40 C.F.R. § 1506.5(a); *see also Essex County Preservation Ass'n v. Campbell,* 536 F.2d 956, 959 (1st Cir.1976) (stating that a federal agency may even allow the state agency to prepare the EIS itself so long as the federal agency furnishes guidance, participates in the preparation, and independently evaluates the statement prior to its adoption). The regulation goes on to state that "it is the intent of this paragraph that accept-

able work not be redone, but that it be verified by the agency." 40 C.F.R. § 1506.5(a). Appellants claim that the administrative record shows that the FHWA did not conduct such an independent review of MHD's data, analysis, and conclusions.

We disagree. The district court accepted the declaration from Markle and specifically found it to be credible to the extent that it describes the steps taken by the FHWA in reviewing MHD's data and conclusions. Markle's declaration describes numerous activities undertaken by FHWA staff in assessing and reviewing MHD's Environmental Reevaluation and the information upon which it was based. In his declaration, Markle states that the "FHWA independently reviewed and evaluated the documents and information contained in the MHD Environmental Reevaluation." He goes on to note "dozens" of conversations with his staff and with MHD staff "to understand fully and to clarify the information submitted by MHD." The FHWA requested and received from MHD the public comment letters submitted on the changed design, as well as MHD's responses to those letters. Markle states that he and his staff "participated in staff visits to the East Boston area to examine the affected locations with respect to the proposed changes." He states that the FHWA utilized the documentation and information generated by the state environmental review process, as well as additional documentation submitted directly to the FHWA. He notes that the FHWA received and considered several letters from appellant AIR in particular. In some areas, Markle goes into more detail regarding the verification of particular pieces of data employed by MHD. For instance, Markle describes at length the analysis of shuttle bus travel times under the revised plan that was undertaken by FHWA and how that analysis utilized, but differed from, MHD's analysis. Also, Markle states that the FHWA reviewed the Airport Station design refinements and considered whether the new design incorporated sufficient room for bus bays to accommodate future projected needs. According to Markle, the FHWA concluded that MHD's analysis was reasonable and that the design provided sufficient room for future bus bays. In sum, Markle states that the 1997–98 reevaluation at issue was the "most extensive reevaluation of this kind that I have been involved with during my 22½ years experience with the FHWA."

Appellants argue that the declaration submitted by Markle does not address particular issues sufficiently enough. To the extent that appellants seek a written point-by-point recitation of each piece of information utilized by MHD and the particular steps undertaken by the FHWA to verify that piece of information, appellants are correct that they have not received it. However, such a detailed delineation is not required; in fact, none of the applicable regulations require any written findings at all for the determination of whether an SEIS must be prepared. See 23 C.F.R. § 771.130(a); 40 C.F.R. § 1502.9(c). The declaration accepted by the district court to explain the FHWA's processes need only be specific enough to convince us that the FHWA complied with the regulation requiring that the appropriate work be "verified" and stating that it need "not be redone." 40 C.F.R. § 1506.5(a). The information provided in Markle's declaration satisfies us that the FHWA conducted a sufficiently independent review.

### 3. The Elevation of Route 1A Southbound and the Effect on the Bremen Street Residences

 Appellants next argue that the FHWA failed to evaluate the effects of raising Route 1A Southbound on the nearby Bremen Street residences located west of the proposed roadway. Appellants argue that, under the new design, Route 1A Southbound will be raised at least sixteen feet to as high as thirty-six feet above grade, increasing the noise levels on Bremen Street. Appellants point to the noise

analysis performed in the 1991 FSEIS, which described the residences on Bremen Street as "sensitive receptors." Appellants note that MHD's own Environmental Reevaluation conceded that Route 1A Southbound "would be expected to contribute to the traffic noise levels at Bremen Street." Appellants claim that these noise effects are "significant" enough to require the FHWA to prepare an SEIS, but were ignored by the FHWA.

However, Markle's declaration clearly states that the FHWA considered the proposed changes to Route 1A Southbound and concluded: (1) that its overall elevation was not materially different from its elevation in the 1991 FSEIS, and (2) that placing the roadway section in question on a viaduct structure, rather than on retained fill, would not have a significant environmental impact. Markle also notes that the new design would move Route 1A Southbound further away from Bremen Street. Markle states that the FHWA reviewed these changes for noise and visual impacts on the Bremen Street residences and concluded that, due to the shift away from Bremen Street and the insignificant elevation difference, the impacts would not be significant. The district court accepted this evaluation, finding that "it is sensible to conclude" that the modest increase in height would be offset by moving the highway away from the community. *See Airport Impact Relief,* 45 F.Supp.2d at 106.

Appellants do not dispute that this conclusion is a "sensible" one, but instead argue: (1) that the district court should not have accepted the Markle declaration on this point, and (2) that the declaration does not state precisely what the FHWA did to make its determinations. Regarding the first argument, we need only note our decision in *Sierra Club II,* in which we approved the supplementation of the administrative record through "affidavits, depositions, or other proof of an explanatory nature." *See Sierra Club II,* 976 F.2d at 772 (quoting *Arkla Exploration Co. v. Tex-*

*as Oil & Gas Corp.,* 734 F.2d 347, 357 (8th Cir.1984)). Appellants argue that there is nothing in the administrative record to explain, so the Markle declaration is explanatory of nothing and should not have been admitted. However, it is precisely when there is nothing in the administrative record that affidavits such as the Markle declaration are needed and allowed under *Sierra Club II. See id.* So long as the new material is explanatory of the decisionmakers' action at the time it occurred (which we are convinced that it is) and does not contain post-hoc rationalizations for the agency's decision (which we are convinced that it does not), the new material may be considered. *See id.* at 772–73.

Appellants' second argument boils down to a claim that Markle's declaration is not specific enough in detailing the FHWA's review process. Appellants attempt to contrast the detailed noise analysis performed in the 1991 SEIS with the less-detailed (at least as documented) analysis performed here. However, a federal agency need not perform the detailed environmental analysis of an EIS before it can determine that no EIS need be prepared. Such a requirement would eliminate the threshold requirements of the regulations in favor of a full EIS or SEIS in every case. This is clearly not the law. *See* 40 C.F.R. § 1502.9(c)(1); 23 C.F.R. § 771.130(a).

Thus, from the materials submitted by the FHWA, it is clear that the FHWA properly considered the environmental effects of raising Route 1A Southbound. Therefore, we agree with the district court that the FHWA's decision was not arbitrary or capricious in this regard either.

### C. Conclusions

In sum, we find that: (1) the district court applied the correct standard for determining whether the FHWA was required to prepare an SEIS in light of the project changes, and (2) the FHWA properly considered the environmental effects of the project changes and found that

those effects were not significant. Therefore, we hold that the FHWA's decision to approve the project changes without requiring an SEIS was not arbitrary and capricious.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's entry of judgment in favor of appellees.