Gary B. and Sharron JOHNSON, Plaintiffs,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.

No. 98–1328 MJD/AJB.

United States District Court, D. Minnesota.

June 1, 1998.

Hans I.E. Bjornson, Leonard, Street & Deinard, P.A., Minneapolis, MN, for Plaintiffs.

Friedrich A.P. Siekert, Assistant United States Attorney, United States Army Corps of Engineers, Togo D. West, Jr., Lieutenant General Joe N. Ballard, Lieutenant Colonel William J. Breyfogle, Minneapolis, MN, for Defendants.

David Olin, Pennington County Attorney, Thief River Falls, MN, for Pennington County.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Plaintiffs seek a temporary restraining order and/or a preliminary injunction: suspending the permits issued by the U.S. Army Corps of Engineers (the "Corps") to the Red Lake Band of Chippewa Indians (the "Band") and Pennington County for the River Road Phase III Project (the "Project"); ordering Pennington County to withdraw its motion to acquire title and possession of the Johnsons' property, currently scheduled for May 22, 1998; enjoining any action in furtherance of the condemnation proceedings against the Johnsons' property.

### Background

Plaintiffs are farmers, landowners and residents of Pennington County. Complaint ¶ 1. Plaintiffs oppose the Project, as permitted, because it would result in the needless destruction of approximately 30 acres of wetland. *Id.* The Project would also sever the Plaintiffs' farm in two, causing disruption to their farming operations. *Id.* Plaintiffs assert, however, that they brought this action because of their interest in preventing the unnecessary filling of wetlands, and not because of any financial interest they may have in the outcome. *Id.*

The Project is the third phase of a realignment and reconstruction of BIA Route 19, located on the Red Lake Indian Reservation

and in Pennington County. Complaint ¶ 9. The Project was proposed by the Band, and is being undertaken by the Band, the United States Bureau of Indian Affairs (the "BIA") and Pennington County. Id. ¶ 10. The BIA had the Band prepare an environmental assessment ("EA") for the Project, pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. Id. ¶ 11.

The EA's identify six alternatives for the site of the Project. Id. ¶ 19. One alternative is the "No action" alternative. Id. Of the remaining alternatives, two are off-Reservation (Alternatives 1 and 2) and three are on-Reservation (Alternatives 3, 4, and 5). Id. The off-Reservation sites upgrade and/or intersect the existing road system and result in the filling of less than an acre of wetland, while the on-Reservation sites bypass the local road system and require the filling of approximately 22 to 31 acres of wetland. Id. One of the on-Reservation sites, Alternative 5, was identified as the Preferred Alternative. Id.

Plaintiffs allege that as stated in the draft EA's and the Final EA, the purpose of the Project is to address safety and traffic concerns that stem from the fact that the existing roads are narrow, contain sharp turns and have sand and gravel surfaces. Id. ¶ 13. Also, there is increased traffic between the Red Lake Reservation and Thief River Falls, the closest large town and the location of the casino owned by the Band. Id. In the Draft EA, it was concluded that "all alternatives would provide the desired trafficability and safety elements for the roadway." Id. ¶ 22.

One of the off-Reservation sites, Alternative 2, follows existing road alignments and requires construction of a new road segment which was placed directly in the path of an existing home and associated outbuildings. Id. ¶ 23. In February 1996, Plaintiffs submitted comments to the Draft EA. Id. ¶ 24. In the comments, Plaintiffs proposed a Modified Alternative 2, which follows essentially the same path as the Alternative 2, but avoids the home and outbuildings that would be affected. Id. Plaintiffs also noted in their comments that under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, a permit may not be issued for a project if a practicable alternative exists that has a less adverse effect on wetlands. Id. ¶ 25. Plaintiffs ar-

gued that as Alternative 5 would require the filling of approximately 30 acres of wetland, whereas Modified Alternative 2 would only affect an acre of wetland and meet the purposes of the Project, Modified Alternative 2 is a practicable alternative under the Clean Water Act, and a permit should not issue for Alternative 5. Id.

The Final Draft EA was issued on April 16, 1996. Plaintiffs' Ex. 4, Final Draft EA. Like the Draft EA, the Final Draft EA identified six alternatives, and found that all proposed alternatives would provide the desired trafficability and safety elements for the roadway. Id. at 29. Alternative 5 was again established to be the Preferred Alternative. Id. at 30. Because the Preferred Alternative required the filling of approximately 30 acres of wetland, the Band applied to the Corps for a Section 404 permit. Complaint ¶ 28. On May 23, 1996, the Corps issued a public notice of the Band's application. In response, Plaintiffs submitted comments to the Corps. Id. ¶ 29.

The Final EA was issued in January 1997. Plaintiffs' Ex. 6. Like the prior drafts, the Final EA identified Alternative 5 as the Preferred Alternative. Id. at 30. In determining which alternative to choose, the following factors were considered in all drafts of the EA and the Final EA: land resources; water resources; living resources; air quality; cultural resources; socioeconomic conditions; resource use patterns; and other values. Id. at 10–16. Alternative 5 was determined to be the Preferred Alternative based on a determination that it had little impact on socioeconomic resources and that the impact on wetlands was slight when considering the value of the resource and its position relative to the general resource base of the Red Lake Reservation. Id. at 30. Alternatives 1 and 2, on the other hand, had been determined to have an unacceptable impact on the socioeconomic resource. Id. at 29. Specifically, Alternative 2 would result in the loss of 75 acres of agricultural land, which could result in considerable loss of income to individual farmers affected. Id. at 19. It was also noted that acquisition of such acreage would be costly, and would be ultimately footed by the taxpayers. Id. Finally, Alternative 2

would displace a home and associated outbuildings, at substantial cost. *Id.*

Appended to the Final EA is a document entitled "Response to Comments on. the Environmental Assessment of the River Road Phase III Project." Complaint ¶ 34. Plaintiffs assert that in this document, the Band contradicts the conclusion in the Final EA that all alternatives met the trafficability and safety concerns of the Project, by stating that only the on-Reservation alternatives are practicable "since they serve to limit the number of intersections with local roads and access points." *Id.* ¶ 34; Plaintiffs' Ex. 6, Final EA, App. 1 at 15.

On April 28, 1997, the District Engineer issued a Department of the Army Permit Evaluation and Decision Document, which authorized the issuance of Section 404 permits for the Project. Plaintiffs' Ex. 8. In reaching the conclusion that the issuance of the permits would not be contrary to the public interest, the District Engineer reviewed the Final EA, comments from agencies such the U.S. Environmental Protection Agency, the Minnesota Pollution Control Agency, U.S. Fish and Wildlife Service, the State Department of Natural Resources, the State Historic Preservation Officer, the Minnesota Audubon Society, State Representatives, Plaintiffs and the Band. *Id.* Based on the review of the above material, the District Engineer rejected the off-Reservation alternatives based on the determination that such alternatives were not practicable alternatives in terms of accomplishing public safety. *Id.*, at 21. In reaching this decision, the Corps adopted the positions of the Band, the BIA and Pennington County, that bypassing the existing road system would eliminate conflicts between local and through traffic, which better promotes public safety. *Id.* Thereafter, the District Engineer issued to the Band and Pennington County Section 404 permits to begin construction of the Project. Complaint ¶ 40. Plaintiffs requested reconsideration of the District Engineer's issuance of such permits, which was denied by the District Engineer on August 8, 1997. *Id.*

The BIA and the Band agreed not to proceed with the Project until Pennington County had acquired the necessary right of way for the portion of the Project located in the county. Complaint ¶ 43. To accomplish this goal, Pennington County commenced condemnation proceedings in the Ninth Judicial District, State of Minnesota, to acquire from the Plaintiffs a highway easement for construction of the Project. *Id.* ¶ 44. The hearing on the condemnation motion was scheduled for May 22, 1998. *Id.* ¶ 45. Plaintiffs allege in their Complaint that if Pennington County is authorized to take their property, Plaintiffs will be irrevocably deprived of their property, subject to their right to appeal, and that they will be irreparably harmed by the loss of wetlands. *Id.*, ¶ 47.

In Count I of their Complaint, Plaintiffs allege that pursuant to the Clean Water Act, ("CWA"), 33 U.S.C. § 1344, only the Secretary, defined as the Secretary of the Army, acting through the Chief of Engineers, may issue permits, for the filling in of wetlands. *Id.* ¶ 49. Plaintiffs argue that as the statute does not allow for the subdelegation of issuances of permits from the Chief Engineer to the District Engineers, the permits at issue in this case are invalid. *Id.*

In Count II, Plaintiffs allege that the District Engineer's rejection of the Alternatives was "arbitrary, capricious or an abuse of discretion." Complaint ¶ 57. Plaintiffs allege that the CWA does not authorize the filling of wetlands if there are practicable alternatives to the proposed project—alternatives that would have less adverse of an impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences. 40 C.F.R. 230.10(a). *Id.* ¶ 54. An alternative is practicable if "it is available and capable of being done after taking into consideration cost, existing technology and logistics in light of overall project purposes." 40 C.F.R. § 230.10(a)(2). Plaintiffs allege that the District Engineer rejected the off-Reservation sites based on a last minute change in the statement. of the Project's purposes, by the Band, and that such rejection was arbitrary, capricious and an abuse of discretion. *Id.* ¶ 57.

*Standard*

██. The Eighth Circuit has established the following analysis to be used in considering a preliminary injunction motion:

[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981); *accord Medtronic, Inc. v. Gibbons,* 527 F.Supp. 1085, 1090 (D.Minn.1981), *aff'd,* 684 F.2d 565 (8th Cir.1982).

### 1. Success on the Merits

The Corps argues that Plaintiffs will not likely prevail on the merits because the Secretary has the authority to delegate the task of issuing permits to the District Engineer and because the decision of the District Engineer was not arbitrary or capricious.[1]

#### A. Delegation

■ Section 404 of the CWA provides that the "Secretary may issue permits ... for the discharge of dredged or fill material into the navigable waters at specified sites." 33 U.S.C. § 1344(a). "Secretary" is defined in the CWA as "the Secretary of the Army, acting through the Chief of Engineers." 33 U.S.C. § 1344(d). The task of issuing Section 404 permits is further delegated to the District Engineer, pursuant to regulations promulgated by the Secretary. 33 C.F.R. § 325.8(b). Plaintiffs argue that as the CWA does not specifically provide for the delegation of the permit authority to the District Engineers, any permit issued by a District Engineer is invalid.

In support of this assertion, Plaintiffs rely on a recent United States District Court opinion, *United States v. Mango,* 997 F.Supp. 264 (N.D.N.Y.1998). In *Mango,* the court determined that Congress did not provide the Secretary of the Army the authority to promulgate regulations permitting further subdelegation of his permit issuing power under Section 404 of the CWA. *Id.* 997 F.Supp. at 277. The court determined that as Congress did provide for the delegation of

the issuance of permits to the Chief of Engineers, but failed to provide for subdelegation to the District Engineers and did not include a rulemaking provision in the CWA, the CWA must be interpreted to prohibit such subdelegation. *Id.,* 997 F.Supp. at 277.

This Court has thoroughly reviewed the court's reasoning in *Mango* and the cases cited therein, and finds that the conclusion that the Secretary lacks the authority to delegate the task of issuing Section 404 permits is erroneous.

■ When reviewing an agency's construction of a statute it administers, this Court must first look to such statute to determine whether is specifically addresses the question at issue. *Chevron v. N.S.D.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Clearly, the CWA is silent on the issue of whether the Secretary may authorize the District Engineers to issue Section 404 permits. This Court must then determine whether the agency's answer is based on a permissible construction of the statute. *Id.,* at 843, 104 S.Ct. 2778. When making this determination, it must be remembered that the agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress. *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

The CWA does not specifically proscribe the subdelegation to the District Engineers the task of issuing Section 404 permits. Nor is there any indication in the Act's legislative history to support such proscription. As noted by the Corps in their brief to the Court, Congress has routinely used the phrase "the Secretary of the Army, acting through the Chief of Engineers" to assign tasks to the Army Corps of Engineers. *See eg.;* 33 U.S.C. § 426j; 33 U.S.C. § 467a(a); 33 U.S.C. § 1293a(a); 42 U.S.C. § 1962d–4(b); and 42 U.S.C. § 1962d–5(a). And the reality of interpreting the CWA and the statute's cited above, as proscribing subdelegation, is

---

1. The Corps also argues that Plaintiffs are unlikely to prevail on the merits as Plaintiffs fail to allege, nor can they establish, the requisite standing and that Plaintiffs have failed to join an

indispensable party. Because of the expedited schedule for briefing and hearing, Plaintiffs did not brief these defenses. Therefore, the Court will not address those issues at this time.

to provide that the Chief of Engineers personally perform tasks such as spreading sand on beaches, 33 U.S.C. § 426j, and issuing tens of thousands of Section 404 permits per year, while at the same time managing an agency which employs thousands and administers many programs. Congress could not have intended such a result.

The Secretary of the Army has the authority to issue regulations assigning work within the department. 5 U.S.C. § 301. Pursuant to this authority, and that provided in the CWA, it was reasonable for the Secretary to promulgate regulations that provide District Engineers the authority to issue Section 404 permits. The delegation of this task enables the Army Corps of Engineers to efficiently and effectively process applications for Section 404 permits.

B. Review of District Engineer's Determination

 Plaintiffs also argue that the District Engineer's rejection of the off-Reservation alternatives was "arbitrary, capricious and an abuse of discretion". When reviewing an agency's decision, the reviewing court

> must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. As long as the agency provides a rational explanation for its decision, a reviewing court cannot disturb it. This narrow standard of review reflects the deference given to agencies' expertise within their respective fields. Moreover, substantial deference is given to an agency's interpretation and application of governing statutes, and particularly its own regulations.

*National Wildlife Federation v. Whistler*, 27 F.3d 1341, 1344 (8th Cir.1994) (citations omitted).

 In issuing its decision, the District Engineer recognized the Project's purpose as providing a safer and more efficient road for public travel. Plaintiffs' Ex. 8, p. 1. The District Engineer further stated that the Project is also intended to bypass existing roads for use by relatively low speed local travel, and by agricultural equipment. *Id.* Plaintiffs argue that the Project's purpose, as adopted by the District Engineer—to the extent it is intended to bypass existing

roads—is an "eleventh hour change" in order to reject the off-Reservation alternatives. Plaintiffs urge the Court to recognize that the Project's purpose was simply to improve safety and trafficability, and as the off-Reservation alternatives were found to meet the safety and traffic concerns in the drafts and Final EA, rejection of the off-Reservation alternatives was arbitrary, capricious and an abuse of discretion.

The Corps responds that in the Final Draft EA, dated April 16, 1996, it was recognized that the Preferred Alternative 5 would eliminate the conflict between local residential and agricultural traffic and through traffic. Plaintiffs' Ex. 4, Final Draft EA, p. 28. Thus there is no merit to the allegation that the Project's purpose as adopted by the District Engineer was an "eleventh hour change." Further, the Corps argues that the District Engineer is not required to accept the conclusions of another agency's environmental assessment. 33 C.F.R. Part 325, App. B, ¶ 20. Finally, the Corps notes that even if the Project's purpose is found simply to be improving safety and trafficability, Plaintiffs cannot dispute, nor do they dispute, that bypassing existing roads that are currently used for local and agricultural traffic, to avoid conflicts with through traffic, better addresses safety and traffic issues.

Having reviewed the record, the Court finds that the decision of the District Engineer to issue the Section 404 permit, to allow construction of the Project consistent with the Preferred Alternative 5, is not arbitrary, capricious or an abuse of discretion. There is no merit to Plaintiffs' claims that the Band incorporated "an eleventh hour change" in the Project's purpose in order to promote Alternative 5. Irregardless, it is Plaintiffs' position that the Project's purpose was to meet safety and traffic concerns. The District Engineer rejected the off-Reservation alternatives because of safety concerns. As noted by the Corps, Plaintiffs do not dispute the contention that bypassing existing roads to avoid conflicts between local/agricultural traffic and through traffic better promotes public safety. The Court also finds no merit in Plaintiffs' contention that the District Engineer conducted only a cursory review and

simply adopted the positions of the Band, the BIA and Pennington County. The Decision Document issued by the District Engineer evidences a very thorough review. Plaintiffs' Ex. 8. Furthermore, the Decision Document also establishes that the District Engineer was very aware of Plaintiffs' concerns and arguments in favor of the Modified Alternative 2. *See,* Plaintiffs' Ex. 8, at 4–8 and 10–13.

Because the District Engineer properly addressed safety and traffic concerns, the Court finds no basis upon which to overturn the decision of the District Engineer. As Plaintiffs' have not established they are likely to succeed on the merits of their claims, Plaintiffs are not entitled to the injunctive relief sought.

IT IS HEREBY ORDERED that the Plaintiffs' motion for a temporary restraining order and/or preliminary injunction is DENIED.