**Bahia PARK, S.E., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civil No. 98–1940(JAG).**

United States District Court, D. Puerto Rico.

Sept. 30, 2003.

Francisco A. Besosa, Adsuar, Muniz, Goyco & Besosa, San Juan, PR, for Plaintiff.

Daniel M. Flores, Washington, DC, Isabel Munoz–Acosta, Torre Chardon, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court are the parties' cross-motions for summary judgment, as well as their opposition and reply briefs. (Docket Nos. 29, 36, 40, 49.) The question for review is whether the United States Army Corps of Engineers' (the "Corps") decision to deny a permit application submitted by plaintiff Bahía Park, S.E. ("Bahía Park") for the proposed development of a medium-income apartment project in Cataño, Puerto Rico, was arbitrary and capricious. The Corps concluded, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), that the proposed development was not dependent on access to water, that alternatives to the proposed site therefore existed, and that Bahía Park failed to demonstrate clearly that there were practicable alternatives to the proposed project site. On November 30, 2001, the Court heard oral arguments on the motions. The Court has reviewed the record, as well as the parties' thoughtful and thorough submissions. It concludes that the Corps's decision to deny the permit application was not arbitrary and capricious. Accordingly, the Court *grants* defendants's summary judgment motion and *denies* Bahía Park's cross-motion.

## FACTUAL BACKGROUND[1]

Bahia Park, S.E., owns a parcel of land of approximately 13.4 acres located in the Palmas Ward of Cataño, Puerto Rico. A portion of this parcel is located within an area known as "La Cienaga de Las Cucharillas" ("Las Cucharillas"). Las Cucharillas is a 2,900 acres herbaceous and forested marsh that remains one of the largest wetland in the area of San Juan Bay. The EPA has designated the marsh as an "aquatic resource of national importance" and it has been placed on the Priority Wetlands List for Puerto Rico. The marsh is surrounded by a number of commercial and residential projects.

In 1996, Bahia Park began the construction of a 300–unit, middle-income, walk-up residential project on said parcel of land. On February 6, 1996, the Corps issued a cease and desist order to Bahia Park on the grounds that Bahia Park had filled 0.3 acres of wetland on the project site. Bahia Park thereafter submitted a proposed jurisdictional determination (J.D.) to the Corps on February 13, 1996. On March 12, 1996, the Corps reviewed and verified in the field the information submitted by Bahia Park. On March 26, 1996, the Corps accepted the determination, subject to two modifications following the field inspection.

Prior to the 1996 jurisdictional determination by the Corps, there were two previous jurisdictional determinations regarding Bahia Park's property in that area. The 1992 J.D. indicated that wetlands existed on a smaller area than that shown in Bahia Park's 1996 proposed J.D. and the Corps' 1996 approved J.D. The 1992 J.D. by its terms expired after three years, and in July 1995 the Puerto Rico Planning Board had advised that the 1992 J.D. was under-inclusive.

In March of 1996, Bahia Park filed an after-the-fact application with the Corps to allow for the 0.3 acres already filled, and identifying the project and its objectives. The application conceded that the proposed work would include the discharge of fill material onto seven acres of marshland, and also stated that there were no practicable alternatives. The Corps sought public comment on the application, and the EPA, the United States Fish and Wildlife Service, and the Conservation Trust of Puerto Rico all recommended denial of the permit application for a variety of reasons. The Corps gave Bahia Park a summary of the comments, and advised them that the proposed project might not comply with the Clean Water Act Section 404(b)(1) Permit Program Guidelines. In addition, Bahia Park was given an opportunity to respond, which they did on July 16, 1996.

Thereafter, the Corps continued to gather and assess information. Bahia Park responded to the relevant information as requested by the Corps, including the identification of two alternative sites that came to be known as "Alternate Site 1" and "Alternate Site 2".

Subsequently, the Corps denied the permit application for several reasons. The Corps found that the proposed project was not water-dependent, that Alternate Site 1 had not been demonstrated to be a non-practicable alternative site, and that Bahia Park had failed to describe any search for alternative sites beyond those it had already disclosed.

Bahia Park subsequently challenged the Corps' decision through the present action, and alleges that the denial of the permit application was arbitrary and capricious.

1. The factual background has been culled from the parties' motions for summary judgment, where they are referenced to the case record.

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C § 1251(a); *see also* 40 C.F.R. § 230.1. Section 301 of the CWA makes the discharge of pollutants into navigable waters unlawful, unless such discharge is authorized by permit. *See* 33 U.S.C. § 1311(a). The Corps issues such permits under section 404 of the CWA. *Town of Norfolk v. U.S. Army Corps of Engineers,* 968 F.2d 1438, 1445 (1st Cir.1992).

The term "pollutants" is defined broadly and includes dredged or fill material. The term "navigable waters" is similarly all encompassing, covering all "waters of the United States." *Id.* Wetlands are included in the definition of "waters of the United States." 40 C.F.R. § 230.3(s)(7); *see also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). Wetlands are defined to include "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(b).

Section 404 of the CWA authorizes the Corps to issue or deny permits for the discharge of dredged or fill material. *See* 33 U.S.C. § 1344(a).

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of the suit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir. 1995); *Maldonando–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.' " *Suárez v. Pueblo International, Inc.,* 229 F.3d 49, 53 (1st Cir.2000) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

Summary judgment is particularly appropriate in cases when an agency's decision is based on an administrative record. *See, e.g., Preserve Endangered Areas of Cobb's History v. United States Army Corps of Engineers,* 87 F.3d 1242, 1246 (11th Cir.1996)("The fact finding capacity of the District Court is ... typically unnecessary [in review of agency action].... The court is to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.") *See, Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)("In applying that

standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.")

 The CWA does not articulate its own standard of review. Therefore, the appropriate scope of review for CWA claims [*actions challenging agency action*] is the standard set forth in the Administrative Procedure Act. 5 U.S.C. § 706(2)(A); *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1445 (1st Cir. 1992). Under that section, the reviewing Court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Airport Impact Relief, Inc. v. Wykle*, 192 F.3d 197, 202 (1st Cir.1999). The task of a court reviewing agency action under the APA's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), is "to determine whether the [agency] has *considered the relevant factors* and *articulated a rational connection* between the facts found and the choice made." *Dubois v. United States Dept. of Agriculture*, 102 F.3d 1273, 1284 (1st Cir.1996)(*quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 97, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983))(emphasis in original); (*see also Airport Impact Relief, Inc.*, 192 F.3d at 202; *Penobscot Air Servs. Ltd. v. Federal Aviation Admin.*, 164 F.3d 713, 719 (1st Cir.1999)). The Court must determine whether the Corps's decision was based on a consideration of the relevant factors and whether the Corps made a clear error of judgment. *Id.* (*citing Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

 "While this is a highly deferential standard of review, it is not a rubber stamp." *Dubois*, 102 F.3d at 1285 (*quoting Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 290 (1st Cir.1995)). Although "the ultimate standard of review is a narrow one," the Court must undertake a "thorough, probing, in-depth review" and a "searching and careful" inquiry into the record. *Id.* (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The Court may not set aside the Corps's administrative decision, however, "simply because [it] is unhappy with the result reached." *Id.* at 1284.

## DISCUSSION

Bahia Park claims that the Corps' denial of the permit application is arbitrary and capricious for the reasons that follow: (1) that the aerial photograph that was the basis for the Corps' jurisdictional determination was outdated and inaccurate, (2) that the practicable alternative sites analysis was incorrectly applied, and (3) that the Corps' denial violates 33 C.F.R. 320.4(j). This Court will address each of those issues in turn.

I. The Corps Jurisdictional Determination

 Bahia Park is contesting the basis for the Corps' jurisdictional determination of 1996, pointing to the Corps' use of a 1985 aerial photograph as proof of the J.D.'s arbitrary and capricious nature. In its argument, Bahia Park points to the Corps' 1992 J.D. and its variation from the 1996 J.D., and claims that a 1985 aerial photograph would only yield inaccurate information.

It is evident from the record, however, that the 1996 J.D. was not based solely on the 1985 aerial photograph. On March 12, 2003, prior to their use of the aerial photograph as an aid in determining the boundaries at issue, the Corps performed an on-site inspection of the area. A.R. File 1,

Doc. 17. The consultant submitted his own photographs noting, among other things, that there was a "large (6–7 acres) herbaceous wetland, located in the center of the property". A.R. File 1, Doc. 17. This site inspection led to a further revision of the wetland boundaries, and it was for that purpose that the 1985 aerial photograph was utilized. A.R. File 1, Doc. 17.

Therefore, it appears from the record that the Corps relied on more than just the 1985 aerial photograph to reach its determination. The mere fact that the photograph at issue was from 1985 does not immediately put into question its capacity to provide the pertinent information being sought, particularly if it is one of several tools being utilized in reaching a determination.

This Court, therefore, sees no reason to deny the deference due to the Corps in matters of how to conduct a technical examination to establish a jurisdictional determination, and finds Bahia Park's first argument to be without merit.

II. The Practicable Alternative Sites Analysis

■ Bahia Park's second argument is that the practicable alternative sites analysis was incorrectly applied by the Corps in order to deny its permit application. In essence, Bahia Park objects to the Corps' finding that the Alternative Site 1 was practicable because: (1) existing access to the area is limited and/or poor, (2) the area's location makes it unsuitable for middle-income housing, and (3) the Corps arbitrarily refused Bahia Park's mitigation proposal.

Bahia Park's first argument as to the accessibility of Alternative Site 1 hinges on the issue of potential cost-increase of the project in order to provide suitable accessibility. The Corps found that the site offered the following alternatives to improve accessibility: (1) access would be either through PR–869, through the Palmas Boulevard extension, or through a bridge over an existing wetland. In both of its briefs, Bahia Park reiterates the high-cost involved in the options presented by the Corps to ameliorate the issue of road access and access to other neighborhoods. This is insufficient to defeat the premise that Alternative Site 1 is a practicable alternative, and this Court finds that Bahia park did not meet its burden of a clear showing to the contrary.

The second argument put forth by Bahia Park is that the first alternative site is not suitable for middle-income housing because of its poor location in terms of its distance from other more upscale neighborhoods and its proximity to the North Distribution warehouse area. Although the area may not be as ideal as the original site, none of the objections raised by Bahia Park make the site impracticable. The fact that Bahia Park's own expert found the site suitable for low-income housing means that, as it stands, it is a suitable site for residential purposes. Therefore, Bahia Park's proposed changes to the area would enhance its value for purposes of a middle-income housing project, but they are not essential to make the site suitable for residential purposes. A.R. File 2, Doc. 20. In addition, this Court finds that the Corps has made a reasonable showing that there are several alternatives available to Bahia Park in order to make the desired changes, and that the cost of said alternatives may reduce Bahia Park's profit, but certainly do not render it a prohibitive endeavor.

■ Bahia Park's final argument is that the Corps refusal to consider its mitigation proposal as part of its practicable alternatives was arbitrary and capricious. At issue is the Corps' interpretation of guide-

line 404(b)(1) and of existing case law as to its interpretation. It is well established that deference is to be given to an agency's application of its own statutes. *See Johnson v. United States Army Corps of Engineers*, 6 F.Supp.2d 1105, 1110 (D.Minn. 1998) (citing *Wildlife Federation v. Whistler*, 27 F.3d 1341, 1344 (8th Cir.1994)). The Corps position is that, *if practicable alternatives do not exist*, then a permit may be granted if (1) there is a determination that the proposed project's impact can be minimized, and (2) once there has been an evaluation of minimization, whether remaining impacts can be mitigated.

Bahia Park puts forth a different argument claiming that, in light of the lack of practicable alternatives, there is no reasonable explanation for the Corps' refusal to accept its mitigation plan. Although Bahia Park offers several cases to bolster its argument, this Court finds Bahia Park's creative reading of existing case law unpersuasive and distinguishable from the present controversy. More importantly, Bahia Park's argument rests on the false premise that there were no practicable alternatives, when the Corps' position all along has been that Bahia Park was unsuccessful in demonstrating a lack of practicable alternatives.

While it is apparent that the parties in this case are of differing opinions, the Corps' contentions as to the possible suitability of Alternative Site 1 seem reasonable and supported by the evidence on record.[2] Moreover, it is this Court's role to examine, in light of the evidence submitted on record, whether the Corps' decision was deficient, not whether it was correct. *See Hall v. Sec'y of Army*, 259 F.Supp.2d 939, 940 (E.D.Mo.2003)(citing *Henry v. United States Dep't of Navy*, 77 F.3d 271, 272–3 (8th Cir.1996)).

### III. Permit Denial under 33 C.F.R. § 320.4(j)

■ Finally, Bahia Park contends that the Corps permit denial is contrary to 33 C.F.R. § 320.4(j) of the Corps regulations. In pertinent part, said regulation states: "in the absence of overriding national factors of the public interest that may be revealed during the evaluation of the permit application, a permit will generally be issued following receipt of a favorable state determination provided the concerns, policies, goals and requirements expressed in 33 C.F.R. parts 320–324 and the applicable statutes have been considered and followed ...", 33 C.F.R. § 320.4(j). Bahia Park's argument seems to be that, because it had the necessary state approvals for the proposed project, the Corps ultimate denial of the permit application was arbitrary and capricious.

This Court finds that Bahia Park's interpretation of the regulation defies logic, for the regulation plainly states that it "will generally be issued" ***provided that*** "the concerns, policies, goals and requirements expressed in 33 C.F.R. parts 320–324 and the applicable statutes have been considered and followed". To posit that issuance of state permits guarantees the issuance of the Corps' permit would serve to render the agency irrelevant and would annul its independent criteria. This Court, once more, defers to the Corps interpretation of its own regulations, and finds that the Corps decision is both reasonable and well substantiated by the existing record.

### CONCLUSION

For the reasons discussed above, this Court finds that the Corps made a reasonable determination, substantiated by the

---

**2.** This Court will not delve into an examination of Alternative Site 2, as it finds that

Bahia Park's objections to Alternative Site 1 were unavailing.

evidence on record, that the permit application *did not* meet the requisite standards because it did not make a clear showing that there were no practicable alternatives. Therefore, the Court concludes that the Corps's decision to deny the permit application was not arbitrary and capricious. Accordingly, the Court **GRANTS** defendants's summary judgment motion and **DENIES** Bahía Park's cross-motion. Judgment will be entered accordingly.

IT IS SO ORDERED.